UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VITERBO LIRANZO a/k/a VITERBO IGNACIO
LIRANZO DICENT,

                        Plaintiff,

     -against-

UNITED STATES OF AMERICA,

                       Defendant.
----------------------------------------------------------------X

**AMENDED MEMORANDUM AND ORDER**
CV 08-2940 (ARL)

**APPEARANCES:**

**LAWRENCE K. KATZ**
**KATZ & KREINCES L.L.P.**
Attorneys for Plaintiff
170 Old Country Road
Suite 316
Mineola, New York 11501

**LORETTA E. LYNCH**
**UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
**by JAMES H. KNAPP, ESQ.**
Attorneys for Defendant
610 Federal Plaza
Central Islip, New York 11722

**LINDSAY, Magistrate Judge:**

      The plaintiff, Viterbo Liranzo ("Liranzo"), commenced this action on July 19, 2008, against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). Liranzo claims that he was falsely arrested and imprisoned, and subject to assault, battery and negligent infliction of emotion distress when, upon the expiration of his incarceration on felony drug charges at the Nassau County Correctional Facility, United States Immigration and Customs Enforcement ("ICE") officers continued to detain him for approximately 100 days and sought his deportation. On December 15, 2010, District Judge

Feuerstein granted the defendant's motion to dismiss for lack of subject matter jurisdiction. On August 9, 2012, the Second Circuit Court of Appeals vacated that decision and remanded the matter for further proceedings.

A "Notice, Consent, and Order of Reference for the Exercise of Jurisdiction by a United States Magistrate Judge" was thereafter signed by both parties and approved by District Judge Feuerstein on October 18, 2012. Accordingly, this matter was tried before the undersigned nonjury for two days on March 5 and 6, 2013. Based on the evidence and the arguments presented, as well as the parties' pretrial memoranda, the court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52.

## FINDINGS OF FACT

Liranzo was born in the Dominican Republic on May 10, 1955. In 1965, when he was 10 years old, he entered the United States with his family and took up residence here as a lawful permanent resident. In 1972, Liranzo's parents divorced and sole custody of Liranzo was awarded to his mother. The divorce and custody proceedings took place in the Dominican Republic. Sometime after the divorce, and while Liranzo was still a minor, his mother became a naturalized U.S. citizen. Because Liranzo was a minor and a lawful resident in his mother's sole custody when she became a citizen, Liranzo was eligible to obtain derivative U.S. citizenship pursuant to Immigration and Nationality Act § 321(a)(3), 8. U.S.C. § 1432(a)(3) (repealed 2000).

Under then existing law, derivative citizenship would automatically be accorded Liranzo, however, he was required to apply for a certificate of citizenship. Although Liranzo claimed at trial to have always been aware that he was entitled to citizenship, Liranzo never applied for derivative citizenship and instead from the age of 18 forward repeatedly applied for a resident

alien card (a green card) in order to remain in the U.S. In fact, his most recent green card was renewed through June 10, 2006.

On September 27, 2005, Liranzo was arrested and subsequently charged with multiple counts of sale and possession of a controlled substance. He was detained at the Nassau County Correctional Center where his prisoner registration information listed him as a non-citizen. On December 12, 2005, Liranzo pled guilty to felony sale of a controlled substance. On February 13, 2006, Liranzo was sentenced to nine months incarceration. On January 25, 2006, after Liranzo's guilty plea, ICE officers interviewed Liranzo concerning his immigration status. Liranzo testified at trial that he told ICE officers during this interview that he was a U.S. citizen, but ICE records of that interview refute his claim. During this interview, Liranzo signed a form described as "Pedigree Questions" in which he confirmed that he was a citizen of the Dominican Republic. Liranzo also supplied the information which appeared on a document described as an affidavit. Although Liranzo did not sign the affidavit, he admitted that the form was read to him and his answers were recorded by ICE officers. Liranzo reiterated in response to a question posed in the affidavit that he was a citizen of the Dominican Republic. In short, Liranzo, who was college educated and completely fluent in English, told the ICE officers what he clearly believed, namely, that he was a citizen of the Dominican Republic. Accordingly, ICE filed an immigration detainer based on their reasonable belief that Liranzo was deportable as a non-citizen convicted of a felony.[1]

---

[1] Although Liranzo claimed that his sister supplied ICE with documentation supporting his claim of citizenship, his sister, who testified, failed to provide support for this assertion. Liranzo's sister recalled a telephone conversation with some unknown person at the Nassau jail, not an immigration officer, who asked only for her mothers naturalization number. She recalled faxing a copy of her mother's naturalization certificate to someone, but had no memory or record of from where, to where, or to whom the document was faxed.

Liranzo testified that his projected release date from the Nassau County jail on the drug charges was March 17, 2006. On March 28, 2006, after learning that he was being held on an immigration detainer, Liranzo signed a request that the Dominican Consulate be notified of his arrest. Liranzo again acknowledged in that request being a non-citizen. Liranzo was taken into ICE custody and lodged on April 4, 2006 at a federal detention center in Louisiana pending removal.

On April 11, Liranzo made his first appearance in Immigration Court. At that proceeding, Liranzo notified the court that he had retained counsel and agreed that the matter be adjourned until April 19 so that his attorney could appear. Thereafter, Liranzo's attorney requested that the proceeding be adjourned to May 3. On May 3, Liranzo appeared with counsel and for the first time claimed to be entitled to derivative citizenship. Liranzo was advised by the court that the burden of establishing his claim was on him. He was also instructed by the court that in order to prove his claim he would have to produce evidence of his parent's divorce, the award of sole custody to his mother, and evidence of her naturalization. Those three documents were critical to his claim of derivative citizenship. At Liranzo's request, the matter was adjourned to May 24 to allow sufficient time to collect the needed documentation.

On May 23, 2006, Liranzo's attorney filed a motion to terminate the deportation proceedings attaching copies of Liranzo's birth certificate, his mother's naturalization certificate, and a copy of the divorce certificate. Although the divorce certificate indicated that custody of Liranzo was awarded to his mother, the certificate cited to a custody decision which appeared in a civil registry identified by number. Liranzo's counsel failed to provide the government a copy of the registry entry reflecting the custody decision. At the court proceedings on May 24, the government requested that an original divorce decree be produced, which Liranzo's attorney

agreed to provide by June 5. At the same time, the government requested time to verify the authenticity of the divorce decree noting that this would require a visit to the relevant offices in the Dominican Republic. Finding the government's request reasonable, and in the absence of any objection, the court reset the date for final resolution of the matter to July 6. The court noted that if the government determined that Liranzo's claim was bonafide before that date a joint motion to terminate could be made.

The investigation of Liranzo's claim of citizenship was assigned to Steven Durio, an ICE deportation officer assigned to the litigation unit. Durio's case load in 2006 consisted of approximately 400-450 cases of which he actively processed some 20-30 cases each day. Durio described that combating fraud is a major concern in ICE investigations. He described that a particular difficulty that ICE faced in 2006, and continues to date, is the widespread use of fraudulent documents to qualify for government benefits including citizenship. Because of this, ICE established the policy requiring that all documents submitted in support of an application for citizenship and other benefits must be if possible in original and authenticated at their source. This policy was in effect in 2006.

The original divorce decree for Liranzo's parents was received at ICE on Wednesday, May 31, 2006, and found its way to Durio's desk by Monday, June 5.[2] The Immigration Court also received the decree on June 5. The very next day, on June 6, 2006, Durio called the Fraud Prevention Unit at the U.S. Embassy in the Dominican Republic and left a detailed message requesting that they undertake to authenticate the divorce decree and any custody award. In the

---

[2] The delay in transmitting the documents amounted to essentially 2 business days because of an intervening weekend. Apparently cases with the letter "L" had recently been re-assigned to Durio causing some re-routing of mail.

5

meantime, Durio made further inquiries and determined that the original decree was located within the Third or Fourth Civil State in Santo Domingo. On June 20, 2006, Durio sent an urgent fax to the fraud unit in Santo Domingo advising them where they might find the original documents and requested that they obtain copies of the originals. The next day, on June 21, Durio received an email response from the fraud unit in the Dominican Republic advising that a certificate verifying the authenticity of the divorce decree was obtained from the Civil Registry and was en route to him by FedEx and would take a few days to arrive. As an aside, the fraud unit advised in their email that the civil registry contained a separate entry reflecting the custody award. Durio submitted his findings to the litigation unit and was directed to secure a copy of the registry entry confirming the custody decision. On June 26, Durio again contacted the fraud unit in Santo Domingo and requested that they forward a copy of the registry reflecting the custody decision. On June 30, the fraud unit responded with an email attaching a copy of the registry entry reflecting the award of sole custody to Liranzo's mother. That same day, upon receiving this last piece of documentary proof authenticating Liranzo's claim, Durio prepared Liranzo's release paperwork resulting in Liranzo's immediate release.

## CONCLUSIONS OF LAW

Pursuant to the Federal Torts Claims Act, New York Law governs with respect to the claims of false arrest and false imprisonment. *See* 28 U.S.C. § 1346(b); *Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984). "Under New York law, 'the tort of false arrest is synonymous with that of false imprisonment.'" *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012). To prevail on a claim for false arrest and imprisonment, a plaintiff must prove that: "(1) the defendant intended to confine [the plaintiff]; (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged.'" *Id.* at 95. Here, the government concedes that Liranzo was confined, conscious of the confinement, and did not consent. Accordingly, the court's only determination is whether Liranzo's detention was "otherwise privileged." The determination of whether the ICE agents actions were otherwise privileged "is determined by consulting federal privileges applicable to federal immigration officers." *Id.* To be privileged, the actions of the ICE officer must be reasonable and the detention must be conducted in accordance with federal standards. *See Hyatt v United States*, 968 F. Supp. 96, 108 (E.D.N.Y. 1997); *see also Caban*, 728 F.2d at 72-3.

There is no question that ICE filed an immigration detainer based on their justified belief that Liranzo was deportable as a non-citizen convicted of a felony because he had signed a form in which he identified himself as a citizen of the Dominican Republic. *See* 8 U.S.C. §1226(c)(1)(B)("The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), (D) [8 USCS § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)] . . . "). The evidence at trial makes clear that Liranzo did so because he did not realize he was entitled to derivative citizenship until removal proceedings were initiated against him in 2006. Nonetheless, Liranzo argues that the government unreasonably delayed his release in that they delayed investigating the authenticity of his claim until they were in receipt of original documents. In effect, Liranzo argues that when the government received a copy of the divorce decree on May 23, the government should have immediately commenced their investigation and not waited until an original document was forwarded.

This argument simply ignores the Immigration Court's implicit finding that the government's request for originals was a reasonable under the circumstances. That court clearly understood the need for originals given the prevalence of fraud. Indeed, it would simply make

no sense to require the government, given its limited resources, to initiate a full blown investigation before it even acquired documents that were at least facially reliable. It was Liranzo, not the government, that had access to the original documents. Yet, he delayed until May 31 to provide an original divorce decree, unaccompanied by specific evidence of the custody decision, despite the fact that he had been in ICE custody since April 4.

Liranzo's second argument is equally unavailing. In effect, Liranzo takes issue with the fact that although the original divorce decree was received at ICE offices on May 31, it wasn't until June 6 that Durio commenced his investigation. The testimony in this regard fails to reveal any undue delay. On the contrary, it appears that Durio undertook to promptly investigate and resolve Liranzo's claim. The original divorce decree was received at ICE on May 31st, a Wednesday afternoon. By Monday, June 5th, the document was on Durio's desk and by Tuesday, the very next day, Durio was on the phone with Santo Domingo in an attempt to secure the necessary documents to verify Liranzo's claim. Although a determination had been made by the Immigration Court at the proceedings on May 24 that the government could reasonably take until July 6, 2006 to complete its investigation, the government did not take the full time allowed. Instead, on June 30, 2006, as soon as the government secured the final piece of evidence verifying the custody decision, the government immediately released Liranzo. Accordingly, the actions of the ICE officer were reasonable and conducted in accordance with federal standards, and thus, Liranzo's claims of false arrest and false imprisonment must be dismissed.

Liranzo's claims of assault, battery and negligent infliction of emotion distress must also be dismissed. First, Liranzo seeks an award for the shackling of his arms and legs and touching each time he was transported. To recover for assault in New York, "a plaintiff must prove that

8

defendant intentionally placed him 'in fear of imminent harmful or offensive contact.' To recover for battery, he must show that the defendant intentionally made 'wrongful physical contact with [him].'" *Torres-Cuesta v. Berberich,* 2013 U.S. App. LEXIS 2937 * 3 (2d Cir. Feb. 13, 2013)(internal citations omitted). Moreover, "[f]or both torts, the plaintiff must also show the defendant's conduct 'was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties.'" *Id.* (citing *Nimely v. City of New York,* 414 F.3d 381, 391 (2d Cir. 2005)). Liranzo presented no evidence at trial suggesting that his treatment by the ICE officers during his transport or incarceration was in any way unreasonable or that any officer, for that matter, made bodily contact that was unjustified or offensive. With respect to the claim for negligent infliction of emotion distress, Liranzo argues that the government failed "to timely investigate [his] assertions of citizenship, and confirm the documents supplied initially by his sisters and later his attorneys." As previously stated, the court finds that the actions of the ICE officers were timely and reasonable under the circumstances presented. As such, Liranzo has failed to establish his claims of assault, battery and negligent infliction of emotion distress.

## CONCLUSION

For the reasons set forth above, the court granted the defendant's motion for a directed verdict at the end of the plaintiff's case. The plaintiff's claims against the defendant are dismissed with prejudice. The clerk of the court is ordered to mark this matter as closed.

Dated: Central Islip, New York
April 29, 2013

**SO ORDERED:**

_____s/_____
ARLENE R. LINDSAY
United States Magistrate Judge